UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| THE ESCAL INSTITUTE OF ADVANCED TECHNOLOGIES, INC., d/b/a SANS INSTITUTE, | |
| Plaintiff, | Case No. |
| v. | FILED ELECTRONICALLY |
| TREADSTONE 71, LLC and JEFFREY BARDIN, | |
| Defendants. | |

## **COMPLAINT**

Plaintiff, The Escal Institute of Advanced Technologies, Inc. d/b/a SANS Institute ("SANS"), by and through its attorneys RatnerPrestia for its Complaint against Defendants Treadstone 71, LLC and Jeffrey Bardin (collectively "Defendants") alleges the following:

## **THE PARTIES**

1.      Plaintiff, The Escal Institute of Advanced Technologies, Inc. d/b/a SANS Institute is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 11200 Rockville Pike, Suite 200, North Bethesda, MD 20852.

2.      On information and belief, defendant Treadstone 71, LLC ("Treadstone") is a limited liability company registered in the State of Florida, having a principal place of business at 11821 Palm Beach Blvd., Unit 126, Fort Myers, FL 33912.

3.      On information and belief, defendant Jeffrey Bardin ("Bardin") is an individual residing in the state of Florida with a home address of 13530 Sabal Pointe Dr, Fort Myers, Florida 33905.

## JURISDICTION AND VENUE

4.     This is an action for violations of the Lanham Act, 15 U.S.C. §1125(a) and state tort law, as well as for declaratory relief of copyright non-infringement arising under the Copyright Act of the United States, 15 U.S.C. § 101 et seq. The Court has subject-matter jurisdiction of this action pursuant to the Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202), 28 U.S.C. §§ 1331, 1332,1338(a), and 1367.

5.     This action seeks relief under federal and state laws that prohibit deceptive business practices, unfair competition, and defamation as well as a declaration that SANS has not infringed purported copyrights purported to be owned by Defendants.

6.     On information and belief, Defendants have continuous and systematic contacts with the State of Delaware including one or more customers located in the State of Delaware.

7.     Defendants have caused and continue to cause injury to SANS in the State of Delaware.

8.     This Court has personal jurisdiction over Defendants pursuant to 10 Del. C. § 3104(c).

9.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1391(c).

10.     An actual case or controversy has arisen between the parties based on, *inter alia*, Defendants' false assertions that SANS has infringed and is infringing alleged copyrights, allegedly in violation of the Copyright Laws of the United States.

## FACTUAL BACKGROUND

11.     SANS was formed in 1989 and is a privately held company that specializes in cybersecurity training, certifications, and research and development.

2

12.     SANS is well known in the field of cybersecurity and offers high quality training, certifications, scholarship academies, degree programs, cyber ranges, and other resources to support cybersecurity professionals.

13.     Among other awards and recognition in the field of cybersecurity, SANS has been designated by the National Security Agency (NSA) as a Center of Academic Excellence in Cyber Defense ("NCAE-C").

14.      The NCAE-C program is managed by NSA's National Cryptologic School and includes partners such as the Cybersecurity and Infrastructure Security Agency (CISA), the Federal Bureau of Investigation (FBI), the National Institute of Standards and Technology (NIST)/National Initiative on Cybersecurity Education (NICE), the National Science Foundation (NSF), the Department of Defense Office of the Chief Information Officer (DoD-CIO), and U.S. Cyber Command (USCYBERCOM).[1]

15.     As part of the core competencies required by the NCAE-C, designated universities (like SANS) must:

    a. Establish standards for cybersecurity curriculum and academic excellence;
    b. Include competency development among students and faculty;
    c. Value community outreach and leadership in professional development;
    d. Integrate cybersecurity practice within the institution across academic disciplines; and
    e. Actively engage in solutions to challenges facing cybersecurity education.[2]

16.     Among other individual awards given to SANS' faculty, Robert M. Lee ("Lee") has been named one of Forbes' 30 under 30 in Enterprise Technology in 2016.  Lee also received EnergySec's 2015 Cyber Security Professional of the Year award.

---

[1] *See* https://www.nsa.gov/Academics/Centers-of-Academic-Excellence/, last accessed on June 28, 2022.
[2] *See id.*

17.     During the Spring 2022 National Cyber League competition, students of SANS topped the leaderboards in every category, including placing first in individual player, team, and the cyber power ranking.

18.     SANS presently offers more than 60 different courses on cybersecurity. SANS' distinguished faculty includes 22 separate authors who have published a total of 38 books in the field.

19.     Defendants are aware of SANS' business model and the substantial value attached to SANS' goodwill and reputation, which SANS has developed over many years.

20.     Defendants have entered into a scheme to harm SANS and otherwise divert business to Defendants' competing cybersecurity training programs.

**Defendants Publicly Accuse SANS of**
**Copyright Infringement and Other Misconduct**

21.     Defendants have published and otherwise publicly stated claims that SANS and its teachers, including Lee and Nico Dekens ("Dekens"), have infringed one or more copyrights owned by one or both of Defendants through offering cybersecurity courses.

22.     Defendants have published claims regarding purported copyright infringement by SANS on publicly accessible websites such as medium.com, twitter.com, and cybershafarat.com.

23.     Defendants have published and otherwise publicly stated that the course work offered by SANS and the private blogs of Dekens allegedly include or refer to training materials purportedly covered by one or more copyrights purportedly owned by one or more of Defendants.

4

24.     In an online publication dated June 14, 2022, a copy of which is attached as **Exhibit A**, Defendants identify "the form of naming conventions, process flows, concepts, tools, and wording, syllabus content" as content copied by SANS that would infringe one or more of Defendants' purported copyrights.  (**Exhibit A**, at page 10.)

25.      Defendants alleged that "[s]oon after taking [Treadstone's] courses, Mr. Dekens authored his first course under the SANS banner in direct contravention to the Treadstone 71 license agreement (SEC487 and SEC587)."  (**Exhibit A**, at page 9.)

26.     In a series of Twitter posts dated June 16, 2022, June 17, 2022, and June 20, 2022, reproduced below and collectively attached as **Exhibit B**, Defendants accused SANS of offering "stolen" course work, and embedded a link in one of these tweets to the publication attached as **Exhibit A**.

27.     Defendants publicly alleged that they "expect threats, recriminations, and denials from SANS. [They] expect online trolling from friends of at least one of the authors...Financial gain seems to be the core undercurrent at SANS."  (**Exhibit A**, at page 23).

28.     Well before Defendants' claims of copyright infringement materialized, Defendants began a campaign of harassment against SANS aimed at tarnishing SANS' reputation in the cybersecurity field.

29.     In 2017, Defendants published a series of posts to cybershafarat.com, posts which are referenced again in a Twitter post dated October 11, 2021, attached as **Exhibit C**.

30.     In the posts attached as **Exhibit C**, Defendants associated SANS with Iranian cyberwarfare and training of hackers to gain unauthorized access into computerized systems.

31.   Defendants claim that SANS is "visibly involved" in "train[ing] those who

hack [customer's] organizations."  (**Exhibit C**, at page 3.)  This claim is reproduced below:

Nice to see that SANS is contributing to the Iranian Cyber Warfare effort. Fully available for download from an Iranian site in their entirety.

Source: https://cybershafarat.com/2017/12/04/sans_iran/

The problem of making available, exporting training packages along with software continues as Iranian hackers exploit our cyber security defensive measures. Interpretation of sanction wording seems to prohibit such activity yet any opportunity to monetize a break in sanctions seems to be the normal course of events. Many companies continue to education Iranians in the arts of cyber offence and defence. Cyber and Threat Intelligence will help us in our quest but why do we continue to assist this growing threat with education directly tied to their hacking? Others sell through resellers who provide the services in Iran. Some may not know but a simple Google search shows they are really not paying attention or, do not care since revenue is driven higher through global sales. Request certification information from each company may reveal the true story since tracking of such is a requirement for all those below.

Why do we continue to arm our adversaries with the tools to do us harm? They may still get what they need through other avenues but why make it easy?



Those visibly involved in the activity are listed below in a series of screenshots demonstrating the scope and breadth. From CISCO and SANS to ISC2 and Fortinet, EC-Council (still at it) and others, the list is many. See for yourself. Ask these vendors why? Do you want to get a cert from the same companies who train those who hack your organizations? You choose.

From April 2017 –
https://cybershafarat.com/2017/12/04/sans_iran/

Source: https://cybershafarat.com/2019/04/25/iran-hackers-cyber-security-training/



Source: https://twitter.com/Treadstone71LLC/status/1447591580764884996

32.     SANS has never knowingly offered cybersecurity training to Iranian cyber warfare participants or other hacker organizations.

33.     The NSA would not have designated SANS as a Center of Academic Excellence in Cyber Defense in 2022 (and extending through 2027) if Defendants' claims concerning SANS' affiliation with (or even negligence concerning) illicit organizations back in 2017 were in any way credible.

34.     Instead, SANS has worked diligently to stem intellectual property theft by hacker organizations, including in Iran.

35.     It is well known that various organizations in Iran are engaged in rampant theft of intellectual property.

36.     SANS has continually addressed efforts by hacker organizations, including those in Iran, concerning potential and actual theft of IP.

37.     Among other the measures taken by SANS to prevent intellectual property theft by Iranian cyberwarfare organizations, SANS has blocked Iranian IP addresses.

38.     On information and belief, Defendants are aware that their posts and accusations, referenced above, are knowingly false.

**Defendants' DMCA Takedown Letters**

39.     Separately, Defendants have sent at least two DMCA takedown notices, seeking to have one or more websites hosting SANS' materials removed and to otherwise interrupt the business of SANS.

40.     On April 18, 2022, SANS received a letter from Defendants, attached as **Exhibit D**, alleging SANS has infringed one or more copyrights owned by Defendants without supplying details or registrations.

41.     In the letter attached as **Exhibit D**, Defendants alleged that Lee and Dekens copied purported course materials owned and offered by Defendants.

42.     Defendants alleged that certain SANS courses (e.g. SEC 487 and SEC 587) and the private blogs of Dekens infringe one or more copyrights owned by Defendants without supplying details or registrations.

43.     On May 26, 2022, SANS received a letter from Digital Millennium Copyright Act Services on behalf of Defendants, attached as **Exhibit E**, alleging SANS engaged in improper conduct, including copyright infringement, by offering certain classes including SEC 587 and FOR 578.

44.     On May 29, 2022, SANS received a notification from Imperva (a provider of web services) of a complaint submitted by Defendants, attached as **Exhibit F**, demanding that Imperva take down multiple certain of SANS' websites hosting the identified course materials without supplying details or registrations of purported copyright registrations.

45.     To avoid further disruptions of its business attributable to Defendants, SANS responded to the DMCA takedown notices by sending counternotifications.

46.     On June 2, 2022, SANS sent a DMCA counter notification letter pursuant to 17 U.S.C. § 512(g)(3) to Imperva and by copy to the Defendants, attached as **Exhibit G**, denying Defendants' allegations and explaining that there was no infringing material in the subject SANS URLs concerning the contested courses.

47.     On June 14, 2022, Defendants also filed a complaint with GIAC Certifications pursuant to its Code of Ethics, seeking to have SANS' certifications revoked.

48.     On June 21, 2022, SANS sent Treadstone and Bardin a cease and desist letter, attached as **Exhibit H**, demanding that Defendants (i) cease making defamatory statements—whether online, in writing, verbally, or in any other format—concerning the origination of SANS content;  (ii) cease lodging baseless ethics complaints or other attacks that SANS has infringed unidentified copyrights; (iii) cease sending DMCA letters seeking to take down websites hosting SANS materials; (iv) provide evidence of Defendants'

copyrighted materials, including federal registration numbers; and (v) provide evidence of SANS's purportedly infringing materials.

49.     After receiving SANS' letter, Defendants did not cease making public statements concerning SANS and its agents and instead continued to accuse SANS of copyright infringement.

50.     In a twitter post dated June 22, 2022, attached as **Exhibit I**, Defendants stated, *inter alia*, "We own it.  Others stole it.  Now they try to cancel us.  TXu 2-319-238 …."

51.     On information and belief, Defendants' reference to TXu 2-319-238 is a shorthand reference for U.S. Copyright Reg. No. TXu 2-319-238.

52.     On information and belief, Defendants' reference to "Others stole it.  Now they try to cancel us." is directed to Defendants' allegations that certain of SANS' content infringes U.S. Copyright Reg. No. TXu 2-319-238.



53. Defendants' Treadstone71LLC twitter account includes the following status:

**Treadstone 71**
@Treadstone71LLC

Cyber Intel, Counterintel, Services & Training
treadstone71.com
TXu 2–319–238
Your dishonor will remain

54. On information and belief, Defendants' reference to TXu 2-319-238 is a shorthand reference for U.S. Copyright Reg. No. TXu 2-319-238.

55. On information and belief, Defendants' reference to "Your dishonor will remain" is directed to Defendants' allegations that certain of SANS' content infringes U.S. Copyright Reg. No. TXu 2-319-238.

56. As shown in the printout from the Public Records of the U.S. Copyright Office attached as **Exhibit J**, U.S. Copyright Reg. No. TXu 2-319-238 was purportedly created by Defendants in 2021.

57. U.S. Copyright Reg. No. TXu 2-319-238 purports to be directed to the following subject matter: "Treadstone 71 Lectures 1-3., Treadstone 71 Lecture 4., Treadstone 71 Lecture 5., Treadstone 71 Lecture 5b., Treadstone 71 Lecture 6., Treadstone 71 Lecture 7., Treadstone 71 Lecture 8., Treadstone 71 Lecture 9., Treadstone 71 Lecture 10., Treadstone 71 Lecture 11." (**Exhibit J**.)

58. The SANS courses that Defendants have accused of including copyrighted materials purportedly owned by Defendants include SEC 487, SEC 587, and FOR 578.

11

59.     Since at least as early as May 1, 2015, SANS has offered at least one of SEC 487, SEC 587, and FOR 578.  This course content thus predates the date of creation listed in U.S. Copyright Reg. No. TXu 2-319-238.

60.     Defendants have not removed or taken down any of the aforementioned publications.

61.     Through one or more of the publications and public statements described above, Defendants seek to discourage cybersecurity customers, cybersecurity course instructors, and the U.S. Government from doing business with SANS.

62.     On information and belief, one or more potential cybersecurity customers have been discouraged from doing business with SANS based on the above statements by Defendants.

## COUNT I

### Declaratory Judgment of Non-infringement of Copyright

63.      SANS incorporates by reference the allegations contained in the paragraphs above as if the same were more fully set forth herein.

64.     Defendants have claimed, directly and/or indirectly, that SANS has infringed its purported registered copyrights including, *inter alia*, Reg. No. TXu 2-055-418 and Reg. No. TXu 2-319-238.

65.     By virtue of Defendants' actions against SANS, SANS is at risk of suffering an actual or threatened serious injury in its business. Defendants' actions give rise to a case of actual, present, and justiciable controversy between SANS and Defendants within the jurisdiction of the Court, pursuant to 28 U.S.C. §§ 2201 and 2202.

66.     Neither SANS nor its agents infringe, induce others to infringe, or contribute toward the infringement of any valid copyright owned by Defendants.

67.     Neither SANS nor its agents violate Defendants alleged rights under the Copyright Laws, or any other federal or state, statute, or common laws.

68.     Defendants have suffered no damages as a result of SANS' alleged violations.

69.     SANS seeks declaratory judgment from this Court that it is not infringing and has not infringed any valid copyright owned by Defendants.

70.     SANS seeks attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## COUNT II

### Unfair Competition under Section 43 of the Lanham Act

71.     SANS incorporates by reference the allegations contained in the paragraphs above as if the same were more fully set forth herein.

72.     Defendants have falsely and publicly accused SANS of infringing purported copyrights purported to be owned by Defendants.

73.     Defendants have sent letters containing these false allegations to one or more internet service providers in violation of and pursuant to 17 U.S.C. § 512 in an attempt to shut down one or more websites used by SANS to advertise its business.

74.     Defendants know or should have known that their statements concerning any purported copyright infringement by SANS are false and misleading.

75.     Defendants have falsely and publicly accused SANS of associating and/or conspiring with and/or negligence concerning terrorist organizations and/or hacker organizations.

76.     Defendants know or should have known that their statements concerning any association between SANS and Iran cyber warfare and/or any other terrorist or hacker organizations, or negligence by SANS concerning any of the foregoing, are false and misleading.

77.     Defendants false and misleading statements in the marketplace that SANS and/or its agents are infringing Defendants' alleged copyrights are intended to deceive, and are likely to deceive, a substantial segment of the intended audience.

78.     Defendants' deception is material in that it is likely to influence decisions relating to SANS in interstate commerce.

79.     SANS is likely to be injured by Defendants' false and misleading statements.

## COUNT III

**Unfair Competition under 6 Del. C. § 2531, et seq.**

80.     SANS incorporates by reference the allegations contained in the paragraphs above as if the same were more fully set forth herein.

81.     Defendants have falsely and publicly accused SANS of infringing purported copyrights purported to be owned by Defendants.

82.     Defendants have sent letters containing these false allegations to one or more internet service providers in violation of and pursuant to 17 U.S.C. § 512 in an attempt to shut down one or more websites used by SANS to advertise its business and in an attempt otherwise harm SANS' business.

83.     Defendants have falsely and publicly accused SANS of associating and/or conspiring with and/or negligence concerning terrorist organizations and/or hacker organizations.

14

84.     Defendants disparaged the services and/or business of SANS by false and misleading representations of fact in violation of the Uniform Deceptive Trade Practices Act, 6 Del. C. § 2531, et seq.

85.     Defendants made these false and misleading representations of fact in the course of business.

86.     Defendants made multiple false and misleading representations of fact through publication on various websites and through sending DMCA take down letters designed to remove SANS legitimate website advertisements.  Defendants' behavior constitutes a pattern of deceptive conduct.

87.     Defendants' actions and misrepresentations, individually or taken together, are likely to cause confusion, deception, or misunderstanding and, as such, constitute violations of 6 Del. C. § 2532(a)(1), (a)(8) and (a)(12).

88.     Defendants' deceptive trade practices have confused and deceived, and will continue to confuse and deceive, SANS' customers, potential customers, cybersecurity course instructors, and the U.S. Government and the market for cybersecurity training services.

89.     Defendants' deceptive trade practices were deliberate and willful.

90.     On information and belief, Defendants continue to engage in deceptive trade practices and will continue to make or will make false and misleading representations of fact about SANS and/or its agents.

91.     On information and belief, Defendants' statements and actions were a willful attempt to improperly divert current and prospective customers of SANS to Defendants.

92.     SANS continues to be damaged, and may be irreparably harmed, by Defendants' false and misleading statements of fact.

93.     SANS has no adequate remedy at law.

## COUNT IV

### Business Defamation

94.     SANS incorporates by reference the allegations contained in the paragraphs above as if the same were more fully set forth herein.

95.     Defendants have falsely and publicly accused SANS of infringing purported copyrights purported to be owned by Defendants.

96.     Defendants have falsely and publicly accused SANS of associating and/or conspiring with and/or negligence concerning terrorist organizations and/or hacker organizations.

97.     Defendants online publications falsely discredit the method by which SANS does business.

98.     The public viewing the online publications understood the defamatory character of Defendants' false statements.

99.     On information and belief, and as a result of these false statements, SANS suffered an injury in an amount in excess of $75,000, exclusive of attorneys' fees and costs.

## COUNT V

### Tortious Interference with Prospective Business Relations

100.    SANS incorporates by reference the allegations contained in the paragraphs above as if the same were more fully set forth herein.

101.   SANS had a reasonable probability of business opportunities with prospective customers who were performing web-based research regarding SANS' capabilities to provide cybersecurity training, but who viewed the false and misleading statements by Defendants as described above and who decided not to proceed with SANS as a result.

102.   Defendants were aware that they could benefit from prospective customers of SANS by making false and misleading statements and directing customers performing web searches of SANS instead to Treadstone for such services.

103.   On information and belief, Defendants have full knowledge of the existing and prospective business relationship between SANS and its customers.

104.   Through this conduct, Defendants have intentionally interfered, and continue to intentionally interfere, with SANS' prospective customers.

105.   Through this conduct, Defendants have intentionally interfered, and continue to intentionally interfere, with SANS' prospective cybersecurity course instructors and government contracts.

106.    As a direct and proximate result of Defendants' misconduct, SANS has and will continue to suffer substantial harm to its business.

107.   Defendants have no lawful justification for their tortious interference and does not come within Defendants' privilege to compete in a fair and lawful manner.

108.   SANS has no adequate remedy at law.

## COUNT VI

**Florida Deceptive and Unfair Trade Practices Act
under Fla. Stat. § 501.201 et seq.**

109.    SANS incorporates by reference the allegations contained in the paragraphs above as if the same were more fully set forth herein.

110.    SANS is a "consumer" within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

111.    Defendants have committed deceptive acts and engaged in unfair practices prohibited by the FDUTPA.

112.    Defendants have falsely and publicly accused SANS of infringing purported copyrights purported to be owned by Defendants.

113.    Defendants have sent letters containing these false allegations to one or more internet service providers in violation of and pursuant to 17 U.S.C. § 512 in an attempt to shut down one or more websites used by SANS to advertise its business and in an attempt otherwise harm SANS' business.

114.    Defendants have falsely and publicly accused SANS of associating and/or conspiring with and/or negligence concerning terrorist organizations and/or hacker organizations.

115.    Defendants disparaged the services and/or business of SANS by false and misleading representations of fact and thus acted unfairly and deceptively towards SANS as prohibited by the FDUTPA.

116.    Defendants made these false and misleading representations of fact in the course of business.

18

117.   Defendants made multiple false and misleading representations of fact through publication on various websites and through sending DMCA take down letters designed to remove SANS legitimate website advertisements.  Defendants' behavior constitutes a pattern of deceptive conduct.

118.   Defendants' actions and misrepresentations, individually or taken together, are likely to cause deception and/or have anticompetitive effect and constitute consumer harm within the meaning and requirements of the FDUTPA.

119.   Defendants' deceptive trade practices have confused and deceived, and will continue to confuse and deceive, SANS' customers, potential customers, and the market for cybersecurity training services.

120.   Defendants' deceptive trade practices were deliberate and willful.

121.   On information and belief, Defendants continue to engage in deceptive trade practices and will continue to make or will make false and misleading representations of fact about SANS and/or its agents.

122.   On information and belief, Defendants' statements and actions were a willful attempt to improperly divert current and prospective customers of SANS to Defendants.

123.   Defendants' statements and actions threaten the valuable goodwill associated with the business of SANS.

124.   SANS continues to be damaged, and may be irreparably harmed, by Defendants' false and misleading statements of fact.

125.   SANS has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, SANS prays for the following:

1.      A judgment and declaration that SANS does not violate any of rights of Defendants under the Copyright Act.

2.      An injunction against Defendants, their affiliates, subsidiaries, assigns, employees, agents, or anyone acting in privity or concert with Defendants from charging infringement or instituting any legal action for infringement of Defendants' purported copyrights against anyone acting in privity with SANS, including the divisions, successors, assign, agents, contractors, and customers of SANS.

3.      An injunction against Defendants, their affiliates, subsidiaries, assigns, employees, agents, or anyone acting in privity or concert with Defendants from falsely accusing SANS of infringing Defendants' purported copyrights.

4.      An injunction against Defendants, their affiliates, subsidiaries, assigns, employees, agents, or anyone acting in privity or concert with Defendants from falsely accusing SANS of associating with terrorist organizations and/or hacker organizations.

5.      An order that Defendants, their affiliates, subsidiaries, assigns, employees, agents, or anyone acting in privity or concert with Defendants take down, delete, or otherwise remove the content identified in this Complaint falsely accusing SANS of any misconduct including infringing Defendants' purported copyrights and/or associating with terrorist organizations and/or hacker organizations.

6.      An award of damages to SANS adequate to compensate SANS for actual injuries sustained as a result of Defendants' actions.

7.      An award of treble damages to SANS pursuant to 15 U.S.C. § 1117(a) and/or 6 Del. C. § 2533.

8.      An award of punitive damages to SANS.

9.      A judgment and declaration that this is an exceptional case within the meaning of 6 Del. C. § 2533, and award reasonable attorneys' fees and costs to SANS.

10.     Costs and attorneys' fees pursuant to 17 U.S.C. § 505.

11.     A judgment for such other and further relief in law or in equity as this Court deems just or proper.

Respectfully Submitted,


Dated: 6/28/2022                    _/s/ Christopher H. Blaszkowski_____
                                   Christopher H. Blaszkowski, DE 5673
                                   RATNERPRESTIA
                                   2200 Renaissance Blvd, Suite 350
                                   King of Prussia, PA 19406
                                   cblaszkowski@ratnerprestia.com
                                   Telephone: 610-407-0700
                                   Facsimile: 610-407-0701

                                   W. Jackson Matney, Jr. (*pro hac vice* pending)
                                   RATNERPRESTIA
                                   1090 Vermont Avenue NW
                                   Suite 1200
                                   Washington, DC 20005
                                   wjmatney@ratnerprestia.com
                                   Telephone: 202-808-7372
                                   Facsimile: 610-407-0701

                                   Shayne D. Rasay (*pro hac vice* pending)
                                   RATNERPRESTIA
                                   2200 Renaissance Blvd, Suite 350
                                   King of Prussia, PA 19406
                                   srasay@ratnerprestia.com
                                   Telephone: 610-407-0700
                                   Facsimile: 610-407-0701